## Koval v. Melnick

*Neil E. Jokelson,* for plaintiffs.

*Michael S. Melnick,* pro se and *Gerald Hanchulak,* for defendant.

MAIER, *J.,* March 7, 2007—This opinion supports this court's order dated December 18, 2006, holding that the Recreational Use of Land and Water Act, 68 P.S. §477-1 et seq. (RULWA), applied to the property in question in this matter, and entering judgment in favor of defendant Michael Melnick, Esquire in this legal malpractice claim.

We found the RULWA applied to the property in question and accordingly that defendant in this case, Attorney Melnick, could not be found negligent for so stipulating. If counsel had not so stipulated, the trial court would have been required to make a determination as to the RULWA's applicability. We find that the trial court would have found, or in our opinion should have found, that the RULWA applied and accordingly plaintiff's burden in the underlying case would have been the same with or without counsel's stipulation. Accordingly, plaintiff is unable to establish the required elements of a legal malpractice claim in Pennsylvania that counsel failed to exercise ordinary skill and knowledge and that such negligence was the proximate cause of plaintiff's damage.

## FACTS AND PROCEDURAL HISTORY

This legal malpractice action arose out of Attorney Melnick's representation of the estate of Steven Koval who died in the early morning hours of September 3, 1994 when the truck he was riding in drove over an

embankment on the subject property. T.R. 6/3/99, volume.

Steven Koval was driving through Duryea Mountain with his friend and co-worker, Steve Goul, to reach a scenic overlook. T.R. 6/3/99 at 181. Both men were at a beer party on the adjacent property before going on this drive. T.R. 6/3/99 at 117-118, 373. Mr. Goul testified in the underlying trial that he arrived at the party at about 6 p.m. Hours later, at about 2:30 or 3 a.m., Mr. Koval, with Mr. Goul as his passenger, attempted to drive his Buick Regal but the road was not passable in this vehicle. T.R. 6/3/99 at 182, 183. They returned to the tree farm where they worked and where they had been partying earlier and took instead Mr. Goul's truck, which ultimately traveled the same road that was not passable in the car. T.R. 6/3/99 at 183-85. Based on the tire tracks in the dirt at accident scene, the truck backed up several times before going over the edge. T.R. 6/3/99 at 119-20.

Steven Koval knew the mountain, having spent many years traveling there for recreation. He directed Mr. Goul as to how to get to the scenic overlook. T.R. 6/3/99 at 185. Mr. Goul testified that after sliding down an embankment, the truck went over the edge of the roadway and into a pit located on the mountain. This pit, along with 19 acres of Duryea Mountain, was owned by Duryea Realty and leased by Airport Sand and Gravel Company in Luzerne County, Pennsylvania, a defendant in the underlying suit. T.R. 6/3/99 at 186. This fall caused Steven Koval's injuries and ultimately his death. T.R. 6/3/99 at 187-88. Mr. Goul admitted fault for this accident. T.R. 6/3/99 at 192.

A jury trial was held in the Court of Common Pleas in Luzerne County on June 3, 1999 wherein the decedent's family sued Airport Land & Gravel, Pagnotti Coal Company and Duryea Realty Company for their willful or wanton failure to guard against or warn of the dangerous condition which caused the accident. Defendant Airport Land & Gravel joined Steven Goul as an additional defendant.

Before trial, Attorney Melnick stipulated with defense counsel that the RULWA applied under the facts of the case. Accordingly, his burden was to show that defendants' failure to warn or guard against this dangerous condition was wanton or malicious.

The jury was asked if Airport Sand & Gravel engaged in willful or malicious conduct by failing to guard against or warn against a dangerous condition. The jury answered no. T.R. 6/3/99 at 877. The jury found further that additional defendant Steven Goul was negligent, and that such negligence was a substantial factor in bringing about plaintiff's harm. The jury also found that plaintiff decedent, Steven Koval, was contributorily negligent and that such was a substantial factor in bringing about his harm. The jury allocated 60 percent of the causal negligence to Steven Goul and 40 percent to Steven Koval.

Plaintiff in the legal malpractice matter before this court is the decedent Steven Koval's family. They sued Attorney Melnick, claiming it was malpractice to stipulate that the RULWA applied to the property—plaintiff claims it does not—and that this malpractice caused their damages, a defense verdict in the underlying suit. Plaintiff argues Attorney Melnick unnecessarily and erroneously increased their burden of proof to a showing of

wanton or malicious failure to warn or guard against from a showing of mere negligence.

This matter had been conferenced extensively before this court and was ultimately scheduled for a jury trial to have commenced on December 4, 2006. After the jury was selected, counsel asked to conference with the court and proposed that the court make and enter its finding as to whether the RULWA applied to the property in question and then enter an order accordingly which the parties could then choose to appeal if they so desired.

This court found that the RULWA applied to the property in question and accordingly Attorney Melnick was reasonable and not negligent for agreeing to the same. We made this decision based on the existing case law at the time of counsel's stipulation and the facts concerning the land which were available to counsel. We also found that the jury in the underlying trial heard ample evidence against plaintiff's interest to justify their verdict. Causation cannot be established because plaintiff cannot prove that Attorney Melnick's stipulation was the cause of the defense verdict. Rather, the stipulation was consistent with existing law and the defense verdict appears to be supported by the evidence submitted at the June 3, 1999 trial.

Evidence that the men were drinking at a party hours before deciding to drive into the mountain and that Mr. Koval was directing Mr. Goul on where to drive, evidence that the men, after finding the road impassable with a car returned with a truck and that the tire treads showed that Mr. Goul made several attempts to get over the rise in the road just before the drop-off and evidence that Mr.

Goul admitted fault in the accident all support the verdict that was rendered by the jury at the June 3, 1999 trial.

After finding that RULWA applied to this property, we entered judgment for defendant Attorney Melnick, and this appeal followed.

## DISCUSSION

On appeal, plaintiff argues that the court erred in holding that RULWA applied to the subject property and in ruling for defendant Attorney Melnick by finding that he was not negligent in stipulating that RULWA applied to the subject property.

In order to establish a claim of legal malpractice in Pennsylvania, a plaintiff must prove three basic elements: (1) employment of the attorney or other basis for a duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such failure was the proximate cause of damage to the plaintiff. *Rizzo v. Haines,* 520 Pa. 484, 499, 555 A.2d 58, 65 (1989). An essential element to this cause of action is proof of actual loss rather than merely nominal damages, speculative harm or the threat of future harm. *Rizzo,* 520 Pa. at 504-505, 555 A.2d at 68. Damages are considered remote or speculative if there is uncertainty concerning the identification of the existence of damages rather than the ability to precisely calculate the amount or value of damages. *Id.*

A legal malpractice action in Pennsylvania requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case. *Kituskie v. Corb-*

*man,* 552 Pa. 275, 281, 714 A.2d 1027, 1030 (1998). Plaintiffs must establish they would have been the successful litigants in the underlying litigation in order to prevail in a legal malpractice claim. *Id.* at 275, 714 A.2d at 1027.

As we explain below, because counsel's decision to stipulate that RULWA applied in the underlying litigation was based on a correct reading of RULWA, plaintiff cannot prove the required elements of malpractice, namely that he failed to exercise ordinary skill and knowledge and that such failure was the proximate cause of plaintiff's damages.

### The Recreational Use of Land and Water Act
### 68 P.S. §477-1 et seq. (2006)

The relevant portions of the Act which apply to this case follow.

"Section 477-2. Definitions.

"As used in this act:

"(1) *'Land'* means land, roads, water, watercourses, private ways and buildings, structures and machinery or equipment when attached to the realty.

"(2) *'Owner'* means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.

"(3) *'Recreational purpose'* includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, water sports, cave exploration and viewing or enjoying historical, archaeological, scenic, or scientific sites.

"(4) *'Charge'* means the admission price or fee asked in return for invitation or permission to enter or go upon the land.

"Section 477-3. Duty to keep premises safe; warning.

"Except as specifically recognized or provided in section 6 of this Act, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

"Section 477-4. Assurance of safe premises; duty of care; responsibility, liability.

"Except as specifically recognized by or provided in section 6 of this Act, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

"(1) Extend any assurance that the premises are safe for any purpose.

"(2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

"(3) Assume responsibility for or incur liability for any injury to persons or property caused by an act of omission of such persons.

"Section 477-6. Liability not limited.

"Nothing in this act limits in any way any liability which otherwise exists:

"(1) For willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

"Section 477-7. Construction of act.

"Nothing in this act shall be construed to:

"(1) Create a duty of care or ground of liability for injury to persons or property.

"(2) Relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this act to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care."

The trial record was replete with testimony and evidence which was available to the parties when Attorney Melnick stipulated to RULWA's applicability. The testimony at trial shows the subject property was open, largely unimproved and rural and that the land was open for others to use without charge for recreational purposes, as defined in the Act.

The subject land was described as 19 acres of undeveloped, unimproved land upon which anyone could enter for the recreational purposes listed in RULWA, namely: "hunting, fishing . . . picnicking, hiking, pleasure driving." 68 P.S. §477-2(3). There was testimony at the June 3, 1999 trial that people typically entered the land to mountain bike throughout the paths. Also, three-wheelers, quads and people in cars and trucks used the roads on this property regularly. T.R. 6/3/99 at 356. While there were security guards who sometimes stopped people from going on the land, for the most part, the guards allowed people to use the land for recreation and hunting. T.R. 6/3/99 at 357-59. "The whole mountain is just one big maze of dirt roads." T.R. 6/3/99 at 365. One of Mr. Koval's co-workers who testified at the initial trial testified that lots of people would go up the moun-

tain. T.R. 6/3/99 at 178, 364. Fishermen were also seen in the area during the summer. T.R. 6/3/99 at 383. Mr. Goul testified that in the month prior to the accident, he was riding throughout this property on his mountain bike. T.R. 6/3/99 at 168. Various entrance gates to the property were left open or unlocked. T.R. 6/3/99 at 176.

Evidence relevant to the permissive use of the property without fee was introduced: the tree farm workers, including Mssrs. Koval and Goul, regularly entered the Airport Sand & Gravel property through the Coxton Road gate which was never locked and barely ever closed, and that on the night of the accident, the security guard for Airport Sand & Gravel stopped by the roundhouse where that party was happening. T.R. 6/3/99 at 176. Mr. Goul testified that he would get to the trails for mountain biking by following the river and crossing the Stephenson Street bridge into the property. T.R. 6/3/99 at 178.

In addition to the plain wording of the applicable sections of the RULWA we are also guided by case law indicating that Attorney Melnick's stipulation to the RULWA's applicability was reasonable in this case and therefore not negligent.

In *Baran v. Pagnotti Enterprises Inc.,* 402 Pa. Super. 298, 586 A.2d 978 (1991), cited by Attorney Melnick in this action, plaintiff in that case also stipulated that RULWA applied to the property in a fact scenario which was similar to the case at bar. Plaintiff in *Baran,* after hanging out with friends on the undeveloped property which included strip mines, left the group and ultimately fell into a strip mine pit which was abutting the road. Plaintiff died and his estate sued the landowner, but stipulating that RULWA applied. The Superior Court did

not question whether the Act applied to the land which was open and largely undeveloped like the land in the case at bar.[1]

In the case of *Friedman v. Grand Sanitation Inc.* 524 Pa. 270, 571 A.2d 373 (1990), the Supreme Court held that RULWA immunized owners of recreational land even if they had not donated the land to the public for recreational purposes. The property in the *Friedman* case was a commercial landfill and RULWA was found to be applicable. It was reasonable for Attorney Melnick to rely upon the existing case law at the time which was consistent with a finding that RULWA applied to the property.

Because we agree that counsel's interpretation of RULWA was correct, we cannot find counsel's actions to be unreasonable and therefore we cannot find his actions were negligent. Plaintiff's legal malpractice claim presumes that plaintiff would have won or would have had a better chance of winning if counsel had not stipulated that the Act applied. To the contrary, however, a court would have been required, prior to submitting the case to the jury, to make a ruling on whether or not the Act applied in that case. Under our reading of RULWA, a court would have or should have found, just as we did, and just as counsel stipulated, that RULWA applied to the landowner in this case.

Accordingly, because RULWA would have been applied to this case, via stipulation of counsel or court order,

---

1. Rather, irrelevant to the case before us, the court questioned whether the Act applied when the landowners were actively trying to keep out trespassers.

plaintiff cannot sustain its burden in this legal malpractice claim to prove that counsel's stipulation caused plaintiff's damages, namely, the June 3, 1999 defense verdict.

## CONCLUSION

Because we find that Attorney Michael Melnick's actions in the underlying case were reasonable because they were based on a correct reading of RULWA, and because plaintiff is unable to prove their damages resulted from counsel's stipulation, we find for defendant, Michael Melnick, Esquire, in this legal malpractice action.